### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT S. CARLBORG, | |
| *Plaintiff*, | |
| v. | No. 18-cv-1881 (DLF) |
| DEPARTMENT OF THE NAVY, | |
| *Defendant*. | |

### <u>MEMORANDUM OPINION</u>

Robert S. Carlborg brings this action against the Department of the Navy under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq*., and the Privacy Act, 5 U.S.C. § 552a, *et seq*., challenging the Navy's response to requests Carlborg made under both acts. Before the Court are Carlborg's Motion for Partial Summary Judgment, Dkt. 23, and the Navy's Cross-Motion for Summary Judgment, Dkt. 28. For the reasons that follow, the Court will grant the Navy's motion and deny Carlborg's motion.

## I.     BACKGROUND

In 2015, after an investigation into alleged misconduct, Robert Carlborg was involuntarily discharged from the United States Marine Corps. Compl. ¶ 3, Dkt. 5. Following his separation from the Marine Corps, Carlborg submitted various FOIA and Privacy Act requests for records related to his time in the Marine Corps and the investigation that ultimately led to his involuntary discharge. *Id.* Carlborg filed this lawsuit against the Navy over its response to those requests on August 10, 2018. *See* Dkt. 1.

Carlborg's complaint alleges five counts. The first pertains to a Privacy Act request submitted on February 5, 2018 that sought "a copy of any and all documents maintained on

[Carlborg]" in the Marine Corps Manpower Management Information System Records, which retains pay and personnel records for "active duty, reserve, and retired Marines."  Hughes Decl. ¶¶ 5–8, Dkt. 28-4.  The Navy searched this system of records but found no responsive material because the records of administratively separated service members are only retained in this system for "6 months beyond the date the separation was processed."  *Id.* ¶ 8.  The Navy then searched a related system of records, the Optical Digital Imaging Records Management System, and located Carlborg's "Official Military Personnel File," which totaled 281 pages.  *Id.* ¶ 9.  The Navy processed this file under the Privacy Act, withheld "personal identifying information pertaining to third parties," and provided a redacted version of the file to Carlborg on March 28, 2019.  *Id.*

Carlborg's second count relates to a FOIA request submitted on August 9, 2017 that sought emails to or from a Marine Corps officer that mentioned "Carlborg" between March 1, 2015, and October 31, 2015, along with any responses to those emails.  *See* Compl. ¶ 10; McMillan Decl. ¶ 6, Dkt. 28-5.  The Navy collected the officer's .pst file, McMillan Decl. ¶ 7, which stores "copies of messages, calendar events, and other items within Microsoft software, such as Microsoft Outlook," Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") at 7 n.1, Dkt. 28-2.  The Navy searched the file as requested and found 244 pages of responsive email records.  McMillan Decl. ¶ 7.  After reviewing these records, the Navy withheld some information pursuant to FOIA Exemptions 5 and 6 and produced the remainder of the records to Carlborg on October 5, 2017.  *Id.* ¶ 8.  After Carlborg had administratively appealed, the Navy discovered "a series of email attachments that were not previously released or properly exempted," produced those attachments to Carlborg, and released some—but not all—of the

material previously withheld under the FOIA exemptions that the Navy had previously invoked. *Id.* ¶ 8–11.

The third count concerns a Privacy Act request that Carlborg made on July 25, 2017, which sought an advisory opinion from the Staff Judge Advocate, Military, Policy Personnel Branch, about Carlborg's separation.  Compl. ¶ 28.  The Navy initially processed the advisory opinion under FOIA, "invoked exemptions [6] and [7(C)] to protect third parties' identities and information," and produced a redacted version of the opinion to Carlborg on August 4, 2017. Hughes Decl. ¶ 12.  After Carlborg administratively appealed, the Navy reprocessed the advisory opinion under the Privacy Act and produced the opinion to Carlborg on July 20, 2018, withholding only a third party's signature at the end of the opinion.  *Id.* ¶¶ 14–15.

Carlborg's fourth count is based on two Privacy Act requests for records "maintained on" Carlborg.  Compl. ¶¶ 40–42.  The first request sought Carlborg's records from the HQMC Correspondence Control Files System, which maintains records relating to "Marines or former Marines who have been the subject of correspondence from a member of Congress."  *Id.* ¶ 40. The second request sought records from the Performance File, which contains the records of those "who, while on active duty or in a reserve status, become the subject of investigation, indictment, or criminal proceedings by military or civilian authorities."  *Id.* ¶ 42.  In response to Carlborg's request, the Navy searched each system twice using the keyword "Carlborg."  Hughes Decl. ¶¶ 31, 36.  In addition, all individuals "who might reasonably have been expected to handle" Carlborg's case searched their own emails, .pst files, desktop, and shared drives for any potentially responsive records.  *Id.* ¶¶ 18, 31.  On January 12, 2018, the Navy produced 161 pages of records in response to Carlborg's requests.  Compl. ¶ 65.  After a series of

administrative appeals, on July 20, 2018 the Navy produced additional records that had been created after the Navy's previous search.  Hughes Decl. ¶ 33.

Carlborg's fifth count concerns two FOIA requests for email records regarding the disciplinary action that led to his separation from the Marine Corps.  Compl. ¶¶ 73–76.  The first request was made on February 21, 2016, and sought any email sent or received by nine named Marines regarding Carlborg's disciplinary action from June 30, 2014 to October 9, 2015.  Pl's Ex. 20, Dkt. 23-2; McMillan Decl. ¶ 15.  Carlborg's other request was submitted on April 12, 2016 and sought all emails sent or received by three named Marine Corps officers regarding their assignment to Carlborg's Board of Inquiry or their handling of Carlborg's case from February 5, 2015 to October 9, 2015.  Pl's Ex. 19, Dkt. 23-2.  In response to the first request, the Navy searched the emails of the requested individuals for the keyword "Carlborg" and provided the responsive material onto a compact disc.  McMillan Decl. ¶ 15 & Ex. C.  In response to Carlborg's second request, the Navy searched the emails of the three specified individuals for the keywords "Carlborg" and "Board of Inquiry."  McMillan Decl., Ex. D at 2.  Carlborg received the results from both requests on August 4 and August 5, 2016.  McMillan Decl. ¶ 16.

On January 13, 2020, Carlborg filed a motion for partial summary judgment.  Dkt. 23. On May 15, 2020, the Navy filed a cross-motion for summary judgment on all counts.  Dkt. 28.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1358 (D.C. Cir. 2012).  A fact is material if

it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Privacy Act mandates that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). The Privacy Act also allows individuals to request notice that an agency's system of records contains information about them. *See* 5 U.S.C. §§ 552a(e)(4)(G), (f)(1). FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

The Privacy Act and FOIA are structurally similar. *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981). Both provide a requester with access to federal agency records about the requester and create a private cause of action when an agency fails to comply with a valid request. *See* 5 U.S.C. §§ 552a(d)(1), (g)(1) (Privacy Act); 5 U.S.C. §§ 552(a)(3)(A), (a)(4)(B) (FOIA). Unlike FOIA, however, the Privacy Act "does not have disclosure as its primary goal. Rather, the main purpose of the Privacy Act's disclosure requirement is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456–57 (D.C. Cir. 1996).

Under both the Privacy Act and FOIA, an agency must conduct an adequate and reasonable search for relevant records. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998,

1003 (D.C. Cir. 2009) (stating that "the Privacy Act, like FOIA, requires" that a search "be reasonably calculated to uncover all relevant documents" (internal quotation marks omitted)).  In this Circuit, courts apply the same standard under both statutes to determine the adequacy of a search.  *See id.*; *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (per curiam) (affirming search's adequacy under Privacy Act for the same reasons the search was affirmed under FOIA).  Thus, "[i]n a suit seeking agency documents—whether under the Privacy Act or the FOIA—at the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Chambers*, 568 F.3d at 1003 (internal alteration and quotation marks omitted).  The agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

If agency searches reveal records responsive to a Privacy Act or FOIA request, an agency may withhold access to the records if the statutes exempt them from disclosure.  *See* 5 U.S.C. §§ 552a(j)(2), (k)(2), 552(b).  Although the Privacy Act and FOIA "substantially overlap," the statutes "are not completely coextensive; each provides or limits access to material not opened or closed by the other."  *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 78 (D.C. Cir. 1982).  The Privacy Act and FOIA "seek[] in different ways to respond to the potential excesses of government," and "[e]ach, therefore, has its own functions and limitations."  *Id.* at 76. Accordingly, "[t]he two acts explicitly state that access to records under each is available without regard to exemptions under the other."  *Id.*  This means that, when both statutes are at play, an

agency seeking to withhold records must "demonstrate that the documents fall within some exemption under *each* Act." *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (emphasis in original).  "If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*

## III.   ANALYSIS

### A.   Adequacy of the Searches

To secure summary judgment, the Navy "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (internal quotation marks omitted).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).  "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.*  The central question is whether the Navy's search was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard*, 926 F.2d at 1201.

Carlborg challenges the adequacy of the Navy's search with respect to Counts IV and V.[1]

---

[1] When Carlborg filed his complaint, the Navy had not yet responded to his request in Count I, Defs.' Mem. at 1; *see also* Compl. ¶¶ 5–9, but did so on March 18, 2019 when it produced a redacted version of Carlborg's "Official Military Personnel File," *see* Hughes Decl. ¶¶ 8–9. Carlborg did not move for summary judgment with respect to this claim, *see* Pl.'s Mem. at 22,

1.      *Count IV*

Carlborg's Privacy Act requests in Count IV sought records "maintained on" Carlborg in

two specified systems of records: the HQMC Correspondence Control Files and the Performance

File.  Compl. ¶¶ 40–42.  In responding to these requests, the Navy twice searched each specified

system for records that included the term "Carlborg."  Hughes Decl. ¶¶ 31, 36.  The Navy also

searched the "email accounts, .pst folders, desktops and shared drive" of individual staff

members who "might reasonably" have been expected to have been involved in Carlborg's

administrative separation.  *Id.* ¶ 18.

The Navy conducted an adequate search for the records specified in these requests.

Judged by a "standard of reasonableness," *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 36 (D.D.C.

2013) (quoting *Weisberg*, 745 F.2d at 1485), the Navy's search for Carlborg's name in the

systems Carlborg specified—and in other locations likely to yield responsive material—

constituted "a good faith effort to conduct a search for the requested records, using methods

which can be reasonably expected to produce the information requested."  *Reporters Comm. for

Freedom of Press*, 877 F.3d at 402.  Carlborg points to "an unexplained 9-page gap in page

numbering of emails that were produced" in response to one of the requests as a basis for finding

the Navy's search inadequate.[2]  Pl.'s Reply Mem. in Supp. of Pl.'s Partial Mot. for Summ. J.

---

nor does he appear to dispute the Navy's argument that it conducted an adequate search in
response to Count I, *see* Defs.' Reply Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.'
Reply") at 1, Dkt. 32.  Regardless, however, the record shows that the Navy satisfied its burden
to show it conducted a search "reasonably calculated to uncover all relevant documents"
responsive to Carlborg's request in Count I.  *SafeCard*, 926 F.2d at 1201.  Not only did the Navy
search the system Carlborg specified using his social security number, *see* Hughes Decl. ¶ 6, 8, it
also "searched[ed] the Optical Digital Imaging Records Management System," *id.* ¶ 9.

[2] Carlborg suggests that the Navy's response was not clearly separated by each request.  Pl.'s
Mem. in Supp. of Pl.'s Partial Mot. for Summ. J. ("Pl.'s Mem.") at 18, Dkt. 23-1.  To the extent

("Pl.'s Reply") at 5, Dkt. 31.  The Navy speculated that the gap was caused by an officer

removing duplicate emails before sending the Navy's response to Carlborg, *see* Hughes Decl. ¶

35, but the Navy's inability to definitively explain the origin of this gap does not render the

methods it used unreasonable.  This is especially true given that the Navy conducted another

search after this gap was identified and found "no records that ha[d] not already been released

to" Carlborg.  Hughes Decl. ¶ 36.

Finally, the reasonableness of the Navy's search is buttressed by the fact that Carlborg

has offered "no suggestion as to where else" the Navy "might have looked for his records or

what other search criteria should have been used."  *Peavey v. Holder*, 657 F. Supp. 2d 180, 190

(D.D.C. 2009).  Carlborg does point to representations made by the Navy during the processing

of his requests indicating there were 1,750 pages of responsive records and argues that the Navy

has failed to adequately explain how only 161 pages of material were ultimately produced.  Pl.'s

Mem. at 19.  But, as detailed in the Navy's affidavits, although there were 1,750 pages of hard

copy files identified as responsive to Carlborg's requests, most of those records were duplicative

or had already been produced to Carlborg in response to earlier FOIA requests.  *See* Hughes

Decl. ¶¶ 22–27.  Carlborg also suggests the Navy's search cannot be adequate because it "has

never identified any files or personnel produced from [the Office of Legislative Affairs]."  Pl.'s

Reply at 5–6.  But "speculation that as yet uncovered documents may exist" is insufficient to

rebut the "presumption of good faith" afforded to the Navy after searching for Carlborg's records

in the systems he specified.  *SafeCard*, 926 F.2d at 1200–01 (internal quotation marks omitted).

---

he also argues that the Navy's response was not reasonably segregated, *see* Defs.' Mem. at 18–
19, the Navy satisfied its segregability obligations by describing the efforts it made to segregate
non-exempt portions of the responsive records.  *See* McMillan Decl. ¶ 12–14; *see also Nat'l Sec.
Counselors v. CIA*, 960 F. Supp. 2d 101, 207 (D.D.C. 2013).

Consequently, the Court finds the Navy has established its search was "reasonably calculated to uncover all relevant documents" responsive to Carlborg's requests in Count IV.  *See id.* at 1201.

        2.    *Count V*

Carlborg's two FOIA requests in Count V sought emails relating to his administrative separation from the Navy.  The first request sought all emails "sent or received" from June 30, 2014 to October 9, 2015 by nine named Marine Corps officers regarding Carlborg's disciplinary case.  Pl.'s Ex. 20.  Carlborg's second request sought all emails sent or received by three named Marine Corps officers from February 5, 2015 to October 9, 2015 regarding their assignment to Carlborg's Board of Inquiry or their handling of Carlborg's case.  Pl's Ex. 19.  In response, the Navy searched the emails of all individuals named in either request for the keyword "Carlborg." The Navy also searched the emails of the three individuals named in Carlborg's second request for the keyword "Board of Inquiry."  McMillan Decl. ¶ 15 & Ex. D at 2.  By searching the emails Carlborg specified by his name, the Navy satisfied its burden to show it conducted a search that was reasonably calculated to produce the emails Carlborg sought about the handling of his disciplinary case.

Carlborg attempts to satisfy his burden to "provide countervailing evidence as to the adequacy of the [Navy]'s search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal quotation marks omitted), by pointing to certain emails he expected the Navy to produce, including three emails in Carlborg's possession that he claims were responsive to his request.  *See* Pl.'s Mem. at 20–21.  But after Carlborg brought these emails to the Navy's attention, the Navy conducted a review of the relevant .pst files and found nine pages of responsive records that had not previously been produced, including one of the emails Carlborg referenced.  *See* Pl.'s Mem. at 11; McMillan Decl. ¶ 19.  The Navy then conducted another

search as part of a "completely renewed" response to his request, but ultimately found "no additional responsive emails." *Id.* ¶¶ 20–21.  In assessing the adequacy of a search, "[t]he issue is not whether any further documents might conceivably exist but rather whether the [Navy]'s search for responsive documents was adequate[,]" *Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "the adequacy of a search is determined not by the fruits of the search, but by the appropriateness of its methods," *Hodge v. F.B.I.*, 703 F.3d 575, 579 (D.C. Cir. 2013) (alterations and internal quotation marks omitted); *see also Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[T]he agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records.").  The Navy's failure to produce particular emails does not suggest the inadequacy of its search.  *See Barouch v. U.S. Dep't of Justice*, 87 F. Supp. 3d 10, 24 (D.D.C. 2015) ("Defendants' failure to find and release these particular records to plaintiff is not, therefore, evidence of agency bad faith.").

Carlborg also speculates that, because the compact disc of files the Navy used to process Carlborg's request was a copy of the potentially responsive material the Navy initially identified, someone could have "manipulated, redacted and eliminate[d] files or documents unfavorable" to the Navy before the material was processed under FOIA.  Pl.'s Reply at 7–8; *see also* Pl.'s Mem. at 10–11.  But the record contains no evidence to support these claims, and the Navy is afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard*, 926 F.2d at 1200 (internal quotation marks omitted); *see also* Pl.'s Ex. 20; McMillan Decl. ¶ 22 (attesting the file was not modified or manipulated).

For these same reasons, Carlborg's request for an *in camera* review of the original compact disc, *see* Pl.'s Reply at 10, is denied.  *See Am. Civil Liberties Union v. U.S. Dep't of*

11

*Defense*, 628 F.3d 612, 627 (D.C. Cir. 2011) (finding *in camera* review was "not necessary" where the agency's affidavit was "sufficiently detailed" and there was "no evidence of bad faith"); *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) ("If the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.") (internal quotation marks omitted).  In sum, the Navy's search was "reasonably calculated to uncover all relevant documents" responsive to Carlborg's requests in Count V. *SafeCard*, 926 F.2d at 1201.

     **B.**    **Privacy Act**

        1.    *Applicability of Privacy Act to Count IV*

As part of the Navy's response to Carlborg's Privacy Act requests in Count IV, the Navy searched individual staff members'.pst files.  *See* McMillan Decl. ¶ 7; Defs.' Reply at 5.  It then processed responsive emails produced from this search under FOIA and withheld material under FOIA Exemptions 5, 6, and 7(C).  Hughes Decl. ¶¶ 18, 31, 34; Defs.' Mem. at 16 n.3.  Carlborg challenges these withholdings on the ground that the responsive emails were actually retrieved from a system of records, and consequently, should have been processed under the Privacy Act rather than FOIA, but he does not otherwise contest the Navy's reliance on Exemptions 5, 6, and 7(C).  *See* Pl.'s Reply 15–16.

"Determining that a system of records exists from which the record at issue was retrieved is a prerequisite to a substantive Privacy Act claim." *Mulhern v. Gates*, 525 F. Supp. 2d 174, 181 n.10 (D.D.C. 2007).  A "system of records" is defined by the Privacy Act as "a group of any records under the control of any agency from which information is retrieved by the name of the

individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).  For information to fall within that definition: "(1) the "information must be 'about' an individual, and (2) it must actually be retrieved by the name or identifier of an individual." *Kearns v. Fed. Aviation Admin.*, 312 F. Supp. 3d 97, 108 (D.D.C. 2018) (internal citations and quotation marks omitted).  "The Circuit has held . . . that records containing an individual's name are not necessarily *about* that individual, and that the *capability* to retrieve records based on individual identifiers is not tantamount to *actually* retrieving them based on such markers." *Id.* (internal citations omitted) (emphasis in original).  Instead, "in determining whether an agency maintains a system of records keyed to individuals, the court should view the entirety of the situation, including the agency's function, the purpose for which the information was gathered, and the agency's actual retrieval practice and policies." *Henke*, 83 F.3d at 1461.  Importantly, the Privacy Act does "not apply to every document created by an agency employee but only to those records considered sufficiently important to the agency's operations or mission to become part of the agency's system of records." *York v. McHugh*, 850 F. Supp. 2d 305, 314 (D.D.C. 2012).

The emails the Navy collected in response to Carlborg's requests were not retrieved from a system of records as defined by the Privacy Act because the email messages and calendar entries stored on the .pst files that the Navy searched are not "sufficiently important to the agency's operations or mission to become part of the agency's system of records." *Id*.  Although Carlborg stresses that the Navy was able to search these files for Carlborg's name, Pl.'s Reply at 15–16, "*capability* to retrieve records based on individual identifiers is not tantamount to *actually* retrieving them based on such markers." *Kearns*, 312 F. Supp. 3d at 108 (emphasis in original).  And Carlborg has not shown that the Navy regularly retrieves information from .pst

files using names or personal identifiers, or that it created these files in order to do so.  *See York*,

850 F. Supp. 2d at 311–15 ("The fact that some documents were labeled with [plaintiff's] name

does not convert the shared J drive into a system of records, particularly where there is no

evidence that the agency used the shared drive to retrieve information by personal identifiers and

the drive was not created for employees to do so.").  The Privacy Act therefore does not apply to

the requests referenced by Carlborg in Count IV and the searches that the Navy conducted in

response to those requests.

> 2.    *Privacy Act Withholdings*

When the Navy processed Carlborg's records under the Privacy Act, it withheld

"personal identifying information pertaining to third parties" such as "names, signatures and

social security numbers."  Hughes Decl. ¶¶ 9, 15.  Carlborg claims there is no basis for

withholding that information under the Privacy Act.  Pl.'s Reply at 11.

Although the Privacy Act requires the Navy to provide Carlborg with "his record", 5

U.S.C. § 552a(d)(1), it also provides that, unless authorized by the Act, "no agency shall disclose

any record which is contained in a system of records by any means of communication to any

person, or to another agency, except pursuant to a written request by, or with the prior consent

of, the individual to whom the record pertains."  5 U.S.C. § 552a(b).  Carlborg argues that

because these records are "about" him, they cannot "pertain" to someone else, and thus the

Privacy Act's prohibition on disclosure without written consent does not apply.  Pl.'s Reply at

11–13.  In support of this argument, Carlborg cites to one case, *Topuridze v. U.S. Info. Agency*,

772 F. Supp. 662 (D.D.C. 1991), which held that individuals are entitled to records under the

Privacy Act that are "about" them, even if information in that record also pertains to another

individual.  But *Topuridze* is no longer good law.  In this Circuit, "when materials pertain to both

a Privacy Act requester and other individuals from whom the agency has received no written consent permitting disclosure, the Privacy Act's prohibition on disclosing information without written consent 'must take precedence,' and the portions of the record pertaining to those third parties must be withheld." *Mobley*, 924 F. Supp. 2d at 57 (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1121 n.9 (D.C. Cir. 2007)).  The Court thus concludes that the Navy properly withheld personal identifying information pertaining to third parties who had not provided their consent to disclose that information pursuant to 5 U.S.C. § 552a(b).

As a final argument, Carlborg invokes a separate statute, 10 U.S.C. § 1556(a), to support his claim that he was entitled to an unredacted copy of the advisory opinion that the Navy produced in response to the Privacy Act request in Count III.  Pl.'s Reply at 3–4.  This too fails because § 1556(a) applies to the release of information in connection with proceedings involving the correction of military records.  *See* 10 U.S.C. § 1556(a).  And Carlborg has provided no authority that suggests that this provision may be enforced as part of an action brought under FOIA or the Privacy Act, or that this Court has jurisdiction to consider a claim seeking to enforce 10 U.S.C. § 1556(a).

## C.    FOIA Withholdings

Finally, the Navy argues it properly invoked FOIA Exemptions 5 and 6 to withhold certain material in its response to Carlborg's FOIA requests in Count II.  Defs.' Mem. at 11–14.  Carlborg failed to respond to this argument.  As a result, the Court may treat it as conceded.  *See Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("In this district, when a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded.").  Nevertheless, the Court finds the Navy's withholdings in response to Carlborg's FOIA requests in Count II were justified under FOIA.

The Navy invoked the deliberative process privilege under FOIA Exemption 5 to withhold emails from a Special Agent to legal counsel "concerning the status of an ongoing investigation of an alleged sexual assault not involving the Plaintiff that identified both the alleged victim and the alleged suspect."  Dowling Decl. ¶ 5, Dkt. 28-6.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This includes all documents that would normally be privileged in the civil discovery context.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  The deliberative process privilege allows agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (internal quotation and citation omitted).  To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative."  *Id.* at 1434. Predecisional material is "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made."  *Id.* (internal quotation marks omitted). Deliberative material "reflects the give-and-take of the consultative process."  *Id.* (internal quotation marks omitted).

Here, the emails withheld under Exemption 5 were predecisional because they relayed "the opinions, recommendations, and assessments of the special agent about the investigation in anticipation of a court-martial or additional administrative action."  Dowling Decl. ¶ 5.  And they are deliberative because they "reflect the internal give and take among Navy personnel about that investigation."  Defs.' Mem. at 14; *see also Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (noting that courts "give deference to an agency's

predictive judgment of the harm that will result from disclosure of information"). Because these emails were both "predecisional" and "deliberative," the Navy properly invoked FOIA Exemption 5 to withhold them. *See Petroleum Info. Corp.*, 976 F.2d at 1434.

FOIA Exemption 6 employs a balancing test and allows agencies to withhold certain information when disclosing it would result in a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). If disclosure would implicate only a de minimis privacy interest, the information must be disclosed; if the privacy interest at stake is greater than de minimis, the court must balance that privacy interest against the public interest in disclosure. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006).

The Navy properly invoked FOIA Exemption 6 to redact the "personal and identifying information" of "DoD and non-DoD personnel" who were not general officers or in director-level positions. Dowling Decl. ¶ 4; McMillan Decl. ¶ 7. These individuals have more than a de minimis privacy interest in keeping their names and personal identifying information from being disclosed. And the general public's interest in disclosing the personal and identifying information of these individuals is minimal. *See, e.g.*, *Davidson v. Dep't of State*, 206 F. Supp. 3d 178, 200 (D.D.C. 2016) (finding there was "no public interest" in knowing "the names and contact information" of State Department employees because it would reveal "little or nothing more about the Department's conduct"); *Kearns*, 312 F. Supp. 3d at 112 (finding the public interest in disclosing "the names, other identifying information, and personal data" of third parties "involved in the FAA's internal investigations" was "nil" because the information would not "shed light on the FAA's performance of its statutory duties"). Accordingly, the Navy properly invoked FOIA Exemption 6 to withhold this information.

**CONCLUSION**

For the foregoing reasons, the Court grants the Navy's cross-motion for summary judgment and denies Carlborg's partial motion for summary judgment.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

August 10, 2020